United States District Court
Southern District of Texas
**ENTERED**
April 23, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAX EDWARD WEBB, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3307 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

### MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his conviction and twenty-five year sentence for possession of methamphetamine. Respondent filed a motion for summary judgment (Docket Entry No. 18), to which petitioner filed a response (Docket Entry No. 22).

Having reviewed the motion, the response, the record, the pleadings, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Background and Claims*

Petitioner pleaded guilty to possession of methamphetamine in Harris County, Texas, and was sentenced to twenty-five years imprisonment. The conviction was affirmed on appeal. *Webb v. State*, No. 01-14-00200-CR, 2014 WL 9868627, *4 (Tex. App. – Houston [1st Dist.] 2014, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review and denied petitioner's application for state habeas relief.

Petitioner claims that trial counsel was ineffective in failing to argue that the contraband found on him was the product of an unlawful arrest, and that the officer's search exceeded the scope of a lawful *Terry* stop.

Respondent argues that these claims have no merit and should be dismissed.

## *Factual Background*

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction.

> A motel owner asked two police officers, Sergeant G. Beck and Deputy C. Marshall, to give a criminal trespass warning to a man and a woman occupying one of the motel's rooms without authorization. The owner told the officers that he had previously notified the woman, and possibly also the man, that they were not supposed to be there.
>
> As the officers approached, they observed the man, later identified as Webb, exiting the room with two large duffle bags. The woman exited right behind him. As she left the motel room, she dropped a baggie containing a substance that Deputy Marshall, an officer who specializes in narcotics crimes, recognized to be methamphetamine.
>
> Sergeant Beck "made contact" with the woman while Deputy Marshall "made contact" with Webb. Deputy Marshall testified that he asked Webb to put down the duffel bags, and when Webb complied Deputy Marshall spotted a black knife in Webb's back pocket. Deputy Marshall asked Webb if he had any weapons on him; Webb replied that he did not. Deputy Marshall detained Webb and began frisking him for weapons.
>
> Deputy Marshall ordered Webb to turn and place his hands on a nearby wall. He quickly found two knives on Webb. As Deputy Marshall reached to retrieve the second knife, Webb took his hands off the wall. The deputy handcuffed Webb as a safety precaution and then continued the frisk. According to his testimony, Deputy Marshall felt an object, which he believed to be a gun, on the inside of Webb's thigh. When Deputy Marshal discovered the object, Webb suddenly turned, lost his balance, and fell on the floor. Because Webb continued to resist the search, Sergeant Beck came over, helped restrain Webb, and unholstered his Taser.

> Deputy Marshall testified that the officers did not remove the object through Webb's waistband because they did not know in which direction the "gun" was pointed and did not want it to accidentally discharge. Eventually, two more officers arrived to help secure Webb. The officers cut through Webb's pants and retrieved the object, which was a cylinder of methamphetamine wrapped in pantyhose. The officers arrested Webb.
>
> Webb moved to suppress the methamphetamine, arguing that his detention and search were not justified under *Terry v. Ohio*, 392 U.S. 1 (1968). The trial court denied the motion. Webb pleaded guilty but retained his right to appeal the denial of his motion.

*Webb*, *1.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts

4

the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## Ineffective Assistance of Trial Counsel

### Standards

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

*Analysis*

Petitioner contends that trial counsel was ineffective in failing to object to the contraband evidence as the product of an unlawful arrest and *Terry* stop. He argues that, had counsel raised these issues, the evidence would have been excluded and he would not have been convicted. Petitioner states that he became aware of counsel's deficient performance when the intermediate appellate court ruled that counsel failed to preserve the *Terry* issue at trial. *See Webb*, 2014 WL 9868627, at *4 ("We conclude that Webb did not preserve any error regarding the scope of the *Terry* frisk. Accordingly, we overrule Webb's second issue."). Although respondent posits that petitioner's guilty plea waived his ineffective assistance of counsel claims, the facts underlying the waiver issue lack clarity in the record. Consequently, the Court will address the merits of petitioner's claims.

7

In rejecting petitioner's ineffectiveness claims on collateral review, the state trial court made the following relevant findings of fact:

4. In the instant writ application, the applicant claims he was denied the effective assistance of counsel at trial.

5. In his first ground for relief, the applicant claims trial counsel failed to argue and preserve an appellate argument that the methamphetamine officers recovered from the applicant was the product of an unlawful arrest without probable cause.

6. In his second ground for relief, the applicant claims trial counsel failed to argue and preserve an appellate argument that the methamphetamine officers recovered from the applicant was the product of an unlawful search that exceeded the scope of a *Terry* frisk.

\* \* \* \*

8. On November 4, 2013, [trial counsel] filed a motion to suppress evidence, in which he claimed that the applicant "was seized without a warrant, probable cause or reasonable suspicion to conduct an investigatory detention" and that the applicant "was searched in violation of his constitutional rights"; in this motion, [counsel] asked the trial court to "suppress all items resulting from the illegal arrest and search of the defendant."

9. On March 4, 2014, [trial counsel] filed a brief in support of the previously filed motion to suppress evidence delineating two arguments: (1) the lack of reasonable suspicion to detain the applicant, and (2) the lack of articulable facts giving rise to a reasonable suspicion that the applicant may be a danger to the officers.

10. On March 4, 2014, the trial court held a hearing on the defense motion to suppress.

11. During the suppression hearing, [trial counsel] argued that the evidence presented during the hearing supported (1) the lack of reasonable suspicion to detain the applicant, and (2) the lack of

8

articulable facts giving rise to a reasonable suspicion that the applicant may be a danger to the officers.

12. Basing its decision on the testimony elicited during the suppression hearing, the arguments of counsel, the defense's written brief, and case law presented by the State, the trial court denied the defense's motion to suppress evidence.

13. The First Court of Appeals reviewed and rejected the applicant's argument that officers lacked the justification to detain and frisk the applicant.

14. It is well established that the Court will not "second-guess through hindsight" the strategy of counsel, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness.

15. Based on [trial counsel's] approximately twenty-seven (27) years of experience as a criminal lawyer, he believed t [*sic*] the "only chance to win the argument at the trial level was to refute the officer's claim that their initial actions were justified" and that subsequent "[a]rguments concerning the scope of the search and the justification for the 'arrest' of the defendant therefore hinged on whether the initial stop was justified."

16. [Trial counsel's] trial strategy focused on showing a lack of a justifiable reason for officers to initially stop the applicant, and to avoid any emphasis on the scope of the search, or the applicant's conduct surrounding the pat down.

17. Based on [trial counsel's] approximately twenty-seven (27) years of experience as a criminal lawyer, he believed it was not beneficial for the applicant that [counsel] invite any argument by the State that the applicant was under arrest, as this would have given officers the legal basis to conduct a limitless search incident to an arrest.

18. [Trial counsel's] conscious professional decision to avoid any emphasis on the scope of the search was based on a desire to avoid the State's argument that the officers could have arrested the applicant for either trespassing or resisting a search, thereby entitling them to a limitless search of the applicant incident to his arrest.

19. [Trial counsel's] trial strategy was successful in that the State limited its argument to (1) the officers having reasonable suspicion for the stop, as opposed to claiming that the officers had probable cause to arrest the applicant and thereby, a justified limitless search incident to arrest, and (2) the officers' observations and perceived dangers.

20. The applicant fails to show that [trial counsel's] strategy of focusing on an unjustified initial stop of the applicant was unreasonable in light of the totality of the facts and circumstances.

21. The applicant fails to show that even if assuming, *arguendo*, [trial counsel] had argued that the methamphetamine recovered by officers was the result of either (1) an unlawful arrest without probable cause, or (2) a search that exceed the scope of a *Terry* stop, that based on the testimony elicited during the suppression hearing, the trial court would have committed error in denying his motion to suppress, or that he would have prevailed on direct appeal.

22. The Court finds, based on a review of the trial, reporter's, and habeas records, that the applicant fails to show that [trial counsel's] strategic professional decision to avoid arguing that methamphetamine recovered by officers was the result of either (1) an unlawful arrest without probable cause, or (2) a search that exceed the scope of a *Terry* stop, fell below an objective standard of reasonableness, or that the applicant suffered harm as a result of [counsel's] strategic decision.

*Ex parte Webb*, pp. 183–187 (case and record citations, footnotes, omitted). The state trial court also made the following relevant conclusions of law:

1. The applicant fails to show that [trial counsel's] representation fell below an objective standard of reasonableness and that, but for [counsel's] alleged deficiencies, there is a reasonable probability that the result of the proceeding would have been different.

2. [Trial counsel's] strategy of focusing on showing a lack of a justifiable reason for officers to initially stop the applicant, and avoiding any emphasis on the scope of the search, or the applicant's conduct surrounding the pat down was reasonable in light of the totality of the circumstances.

3.  [Trial counsel's] strategy of not inviting any argument by the State that the applicant was under arrest was reasonable in light of the totality of the circumstances.

4.  Courts will not "second-guess through hindsight" the strategy of counsel, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness.

5.  Based on the totality of the representation, and the particular circumstances of the case, [trial counsel] provided the applicant with reasonably effective assistance of counsel.

*Id.*, pp. 187–188 (citations omitted). The Texas Court of Criminal Appeals relied on the state trial court's findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner's assertions of unreasonable trial strategy are conclusory and unsupported in the record. He presents no probative summary judgment evidence from the record demonstrating that, had counsel raised the objections, denial of the objections would have constituted reversible error. *See Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). Although petitioner cites various case authorities in support of his legal arguments, he fails to establish applicability of those authorities to the facts of his case.

The record clearly shows that counsel made professional decisions as to how best challenge the evidence, and that those decisions were found reasonable by the state court. That petitioner disagreed with counsel's decisions and trial strategy does not constitute

11

evidence of ineffective assistance. Petitioner establishes neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is unwarranted.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

## *Conclusion*

The motion for summary judgment (Docket Entry No. 18) is GRANTED and this habeas lawsuit is DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT. A certificate of appealability is DENIED.

Signed at Houston, Texas on April 23, 2018.

Gray H. Miller
United States District Judge